IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA,      ) | |
| ) | |
| Plaintiff,      ) | |
| ) | |
| v.      ) | Criminal Action No. 14-61-LPS |
| ) | |
| JOHN THOMAS MATTHEW LEE,      ) | |
| ) | |
| Defendant.      ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Defendant, John Thomas Matthew Lee, faces sentencing after pleading guilty before this Court on November 16, 2015, to Counts One and Five of the Superseding Indictment alleging production and distribution of child pornography, respectively. As a result of his plea, Defendant faces an aggregate statutory maximum sentence of 50 years of imprisonment with a mandatory minimum sentence of fifteen years of imprisonment, to be followed by a period of supervised release between five years and life.[1] Defendant also faces a potential fine, restitution, and forfeiture of several electronic items. Defendant's Sentencing Guidelines range was calculated as part of the Presentence Report (hereinafter "PSR") and his total offense level pursuant to those calculations is 43. *See* PSR ¶ 93. Additionally, the PSR identifies Defendant's Criminal History Category of II. *See* PSR ¶ 107. The guideline range for a Category II defendant with an offense level of 43 is life imprisonment; however, Defendant's maximum possible sentence of imprisonment is 50 years. In light of Defendant's 1) prior history of criminal sexual misconduct; 2) sexual exploitation of multiple minor boys to include hands-on sexual abuse; and 3) collection and distribution of child pornography,

---

[1] The Guidelines recommend lifetime supervision for sex offense convictions. See U.S.S.G. 5D1.2(b) (Policy Statement).

including images that Defendant produced himself, the United States respectfully requests that this Court sentence Defendant to 50 years imprisonment. Such a sentence would be reasonable under 18 U.S.C. § 3553(a) and sufficient but not greater than necessary to reflect the seriousness of the offenses, promote respect for the law, to provide just punishment for the offenses, and would accurately reflect all other sentencing factors.

## FACTUAL BACKGROUND

On October 16, 2013, Homeland Security Investigations (hereinafter "HSI") received a CyberTip Report from the National Center for Missing and Exploited Children (hereinafter "NCMEC"), indicating that an individual using a Verizon Wireless cellular phone and phone number had attempted to upload an image of child pornography to a remote storage location using a service known as "V CAST Manager." An HSI Special Agent viewed the image, which depicts two naked, prepubescent, boys lying on a bed. In the image, one of the boys can be seen holding his penis in his right hand. A third prepubescent boy is standing over the other two with an erect penis. The CyberTip Report also listed an email address of brocktonboy8565@aol.com as being associated with this activity.

On October 23, 2013, pursuant to a summons issued by HSI, Verizon Wireless produced subscriber information relating to the Verizon phone and corresponding phone number and learned that the subscriber was Defendant and that he resided at an address in Silver Spring, Maryland. HSI also reviewed the Maryland Sex Offender Registry and located an entry that matched Defendant. The entry indicated that Defendant was born in 1965 and had a registered residential address that matched the address listed in the Verizon Wireless subscriber records. Defendant also registered as sex offender in the State of Delaware after an interstate move in July of 2013. The same phone number listed in the Verizon records matched the listing on the Delaware registry and the previous listing on the Maryland registry.

  HSI also queried the records of the National Crime Information Center and discovered that Defendant had been arrested by the Naval Criminal Investigative Service on December 6, 2007 on charges of aggravated assault, forcible sodomy, and other offenses.  Defendant's conduct involved sexual assault against other individuals in the United States Navy, while Defendant was serving as the Naval Academy's Roman Catholic Chaplain.  As part of the investigation, a search warrant was executed on the government computer utilized by Defendant during that time period and law enforcement found six images of child pornography.[2]  As a result of this criminal investigation, Defendant was convicted at general court-martial of several violations of the Uniform Code of Military Justice, including forcible sodomy and indecent assault.  He was sentenced to 12 years confinement to be suspended after 2 years confinement.  Additionally, Defendant was defrocked by the Roman Catholic Church, dishonorably discharged from the United States Navy, and required to register as a sex offender.

  On November 15, 2013, pursuant to another investigation, HSI Special Agents based in California received a phone call from a woman about the contents of her 16-year-old son's Instagram account.  The woman stated that an Instagram account, using the name "brocktonboy8565a" was tied to or following her son's account and that she believed that the "brocktonboy8565a" account contained images of child pornography.  After obtaining permission to take over the 16-year-old boy's Instagram account, the HSI Special Agent confirmed that the Instagram account of "brocktonboy8565a" was following the 16-year-old boy's account.

  On December 6, 2013, an HSI summons was served on Instagram (Facebook) relating to the Instagram account of "brocktonboy8565a."  On January 31, 2014, Facebook produced subscriber information for the Instagram account "brocktonboyo8565a," which showed the account was created with a registered email address of brocktonboy8565@gmail.com.  The records also provided an internet protocol (hereinafter "IP") address that was assigned to Verizon Wireless and

---

[2] No charges were brought related to Defendant's possession of child pornography in 2007.

was used to register and login to the Instagram account. The same summons return also showed a different IP address that was also used to login to the "brocktonboy8565a" Instagram account. This address was registered to Internet Service Provider Mediacom Communications. On February 4, 2014, an HSI summons was served on Mediacom Communications and produced records revealed that the account had been active since November 18, 2013 and was assigned to the Defendant at his then-current address registered with the Delaware State Police Sex Offender Registry.[3]

On February 13, 2014, HSI-California logged into the Instagram account of the 16-year-old boy referenced above and realized the account for "brocktonboy8565a" was no longer in use and appeared to have been deleted. The Special Agent had observed in the past that the "brocktonboy8565a" was an account that was not set to private and the user had posted pictures of an adult, white male showing his face -- some in a U.S. Navy uniform and some without his shirt. The pictures posted by "brocktonboy8565a" did not appear to be pornographic. Based on the fact that the Instagram account "brocktonboy8565a" had over 3,000 "followers" in the past, the Special Agent began to search for other Instagram accounts of a similar name. The Special Agent located an Instagram account, "brocktotonboy8565b," which had the same profile picture of a middle-aged, white male wearing what appears to be a white military United States Navy shirt. This profile picture also matched the profile pictures and images contained on the Instagram account "brocktonboy8565a." The Special Agent observed that the Instagram account "brocktonboy8565b" was set to "private," meaning that he could only see the contents of the account if he was accepted by "brocktonboy8565b" as a follower. Since "brocktonboy8565a" had been "following" the account that the Special Agent had assumed, a request to follow "brocktonboy8565b" was sent. The California-based HSI Special Agent then located Defendant's

---

[3] Defendant moved to Georgetown, Delaware in July of 2013 when he initially registered with the Delaware Sex Offender Registry. He updated his address when he moved to Millsboro in November of that same year.

passport photographs and discovered a match to the Instagram profile pictures for Instagram profile "brocktonboy8565b."

On March 3, 2014, HSI received information from the Cambridge, Massachusetts, Police Department regarding an independent criminal investigation relating to the Internet activity of an Instagram account user "imgayboy13." The Instagram account profile of user "imgayboy13" displayed numerous images of child pornography and the profile photo for the user account "imgayboy13" contained an adult male penetrating the anus of a prepubescent child. User "brocktonboy8565a" was an Instagram "follower" of user "imgayboy13" and therefore had access to "imgayboy13's" private postings.

In the spring of 2014, pursuant to yet another independent investigation, the Federal Bureau of Investigation conducted a search of a child sex offender's residence and seized a computer used by that offender to traffic in child pornography. This offender is alleged to have produced child pornography featuring two boys, aged 10 and 14 years old. During an interview with law enforcement agents, this offender admitted to using Instagram to transmit child pornography images to the Instagram account "brocktonboy8565b." Defendant, using his "brocktonboy8565b" account, reciprocated by transmitting images of child pornography featuring prepubescent boys to the New York-based offender. Chat logs recovered from the New York-based offender's computer show that Defendant discussed the sexual molestation and exploitation of children with the New York-based offender. For instance, during an online chat on or about February 21, 2014, Defendant wrote that he has molested a 15-year-old boy on multiple occasions since last year. Specifically, Defendant stated the following:

"I would meet a kid at the park any day. Take him home and play with him and no one would know"

"Youngest I fucked was 15"

"He let this 47yo daddy fuck his 15yo ass"

**"**Met him a total of 6 times. Each time I unloaded in his ass"

In the same chat on February 21, 2014, Defendant and the New York-based offender also discussed their shared interest in molesting a 10-year-old boy. Defendant stated the following:

**"**I would enjoy having a kid blow me"

**"**Find a cute 10yo boy. Let him suck my daddy dick"

On June 5, 2014, in another independent investigation, NCMEC received a CyberTip from Instagram relating to an image that had been uploaded to the Instagram account of "brocktonboy8565c." This file depicts an adult male with a prepubescent male child who is naked from the waist up. The adult male is completely naked and is seated at a desk with a computer keyboard with the prepubescent child between his legs. The adult male can be seen pulling the pants of the prepubescent child down with his right hand to expose the child's penis.

The Instagram account of "brocktonboy8565c" had an email address of rehobeth8565@aol.com associated with it. A Google search of the screen name "rehobeth8565" listed an account on the webpage http://mylife.com/rehobeth8565. This account listed the following information: "Lt Matt LEE, 48, Millsboro, Delaware" associated with the webpage.

On November 3, 2014, HSI Special Agents and members of the Delaware Child Predator Task Force executed a federal search warrant for the Defendant's Millsboro residence, his Verizon cellular phone and his person. During a brief conversation with HSI agents, Defendant stated that he uses Twitter and has an account under the name "brocktonboy8565."

Defendant had thousands of files depicting child pornography on his cellular phone, HP laptop and one of the two thumb drives seized during the search warrant. His cellular phone alone contained over 1,500 images of child pornography. Defendant's collection is somewhat different, and more concerning, than those of many other child pornography offenders. Defendant collects and trades images of both boys and girls, ranging in age from infancy through mid-teens. He also collects images of young adult males. The depictions are similarly broad in range, featuring

everything from mid-teens posing in self-produced images and prepubescent children engaged in sex acts with other children to the brutal rape of infants.

Defendant also used many of the most popular forms of online communication, including KIK, Instagram, Vine, Skype, and Grindr, to solicit and engage in criminal sexual misconduct. Defendant used these applications mostly on his cellular phone to chat with other adult collectors and trade depictions of child pornography, and to solicit and coerce minors to produce new depictions of child pornography.

Defendant had over 13,000 sent and received text messages on his cellular phone. A significant portion of these text messages reference trading images of child pornography and/or the sexual abuse of children. These include: (1) messages with several minor boys under the age of 15 via Skype, SMS, and standard cellular text; (2) traded depictions of child pornography to and from other individuals via Dropbox and Instagram; (3) cellular messages with a minor girl approximately 13-years-old; (4) messages that reference the grooming of a 12-year-old boy in Pennsylvania for abuse; and (5) numerous messages to and from other adults that reference sexual contact with children of various ages, including those under the age of two.

For instance, Defendant engaged in multiple chats with an individual, User A, during which they discussed Defendant's possible abuse of two children. On September 8, 2014, Defendant wrote to User A, "I'm grooming a little boy in Pennsylvania. He is 11yo. Going to drive up and see him."

During subsequent chats with this same individual, Defendant appears to reference this child, as well as a 6-year-old potential victim that Defendant had targeted. Some of the messages between Defendant and User A appear below.

9/14/2014:

| 8:11PM | Defendant | Talked with a 6yo kid today in town. I wanted him naked and my dick in his ass |
|---|---|---|

10/24/2014:

| | | |
|---|---|---|
| 7:24AM | User A | You fuck that boy yet? |
| 7:34AM | Defendant | Not yet |
| 7:48AM | Defendant | I need to get him away from his mother |

Defendant often used these various online communication applications to chat with minors. Many of these chats recovered from the Defendant's cellular phone contained images of child pornography transmitted to and received by Defendant. For example, Defendant used one mobile-based communication application to communicate with a fourteen-year-old boy, John Doe 1, who lives in Wisconsin. Defendant sent John Doe 1 sexually explicit and non-sexually explicit pictures of himself, and John Doe 1 sent sexually explicit (child pornography) and non-sexually explicit images of himself back to Defendant. Excerpts from their chats appear below.

10/10/2014:

| | |
|---|---|
| 2:49:12AM | John Doe 1: Hey |
| 2:55:50AM | John Doe 1: I'm 14 really love watching your vines |
| 5:36:37AM | Defendant: Hi |
| 5:36:57AM | Defendant: 14 sounds really hot |
| | |
| 10:03:34PM | Defendant: I don't care If your underage. Suck my daddy cock |
| | |
| 10:17:02PM | Defendant: What does your dick look like? |
| 10:19:12PM | John Doe 1: Mines small |
| 10:20:04PM | Defendant: That's why I like young boys. Small dicks |
| | |
| 10:23:15PM | Defendant: Waiting to see your dick |
| 10:23:36PM | John Doe 1: Get me hard send me one more pic of you please |
| 10:24:01PM | Defendant: I like young soft dick |
| 10:24:24PM | (*John Doe 1 sends two newly created images of his flaccid penis to Defendant.*) |
| | |
| 10:52:10PM | Defendant: Send pics |
| 10:52:53PM | (*John Doe 1 sends two newly created images of his erect penis to Defendant.*) |
| 10:53:49PM | Defendant: How much can you show all together? Chest, cock and legs? |
| 10:54:11PM | John Doe 1: Um I can show what ever you want |

10/24/2014

| | |
|---|---|
| 4:38:27PM | Defendant: I want to fuck all the young boys |
| 4:41:45PM | Defendant: Mmmmmmm. I love young underage cock |

Defendant engaged in online chats that involved sexual content with John Doe 1 in November of 2014. During these chats, Defendant requested images of John Doe 1's genitalia. John Doe 1 consequently took photographs of his genitalia and sent them to Defendant. These chats between Defendant and John Doe 1 took place when John Doe 1 was fourteen-years-old, and Defendant was aware of John Doe 1's age at the time.

Defendant employed, used, persuaded, induced, enticed, and coerced John Doe 1 to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct. Furthermore, such visual depiction was actually transported using the internet, a means and facility of interstate commerce, from Wisconsin to Delaware.

Defendant also communicated and exchanged sexually explicit images with another fourteen-year-old boy, John Doe 2, who lives in Louisiana. Defendant requested depictions of John Doe 2's genitalia and received two videos from John Doe 2 that depict John Doe 2 fully nude and engaging in masturbation. John Doe 2's face is clearly visible in both videos and he appears to be approximately fourteen-years-old. Defendant was aware of John Doe 2's age at the time of their communications.

Defendant also exchanged text messages with another fourteen-year-old boy, John Doe 3, who lives in California. Defendant requested depictions of John Doe 3's genitalia and received two nude images from John Doe 3 that depict a nude John Doe 3 from the front and behind. John Doe 3's back, buttocks, and legs are visible in one image and John Doe 3's chest, arms, penis, and legs are visible in the other image. Defendant responded to the images with the message, "Omg!!! Yes. You are so perfect!!! Thank you for sending that pic."

Defendant also engaged in hands-on sexual exploitation of minors. Defendant first communicated online with John Doe 4, a seventeen-year-old boy who lived in Maryland, and requested sexually explicit images from him. Eventually, Defendant discussed meeting up with John Doe 4 to engage in sexual activity. During a conversation on July 21, 2014, Defendant asked

John Doe 4, "you like older?"  Defendant later stated in the same conversation, "I love fucking younger."

Defendant planned to meet John Doe 4 on July 24, 2014.  Prior to their meeting, John Doe 4 confirmed that the then-48-year-old Defendant did not have a problem with his age and sent a text message that stated in part, "And its okay im 17 right?"  Defendant responded with the text, "That's cool. Going to jump in the shower now."  Defendant described in another test message what he wanted John Doe 4 to do during their meeting.  An excerpt from July 24, 2014 text conversation appears below.

| | | |
|---|---|---|
| 9:49AM | Defendant: | You ready for daddy? |
| 9:50AM | John Doe 4: | Mhmm yes sir |
| 9:51AM | Defendant: | You going to suck daddy's hard cock? |
| 9:51AM | John Doe 4: | Yes sir :) |
| 9:51AM | Defendant: | Good son |
| 9:52AM | Defendant: | Be there soon |

On July 24, 2014, Defendant drove his car from Delaware to Maryland to pick up John Doe 4 and engage in sexual activity.  They traveled back to Defendant's home in Delaware and en route, Defendant took image "IMG_20140724_114557_624.jpg."  This image depicts John Doe 4 sitting in Defendant's car with a seatbelt on.[4]  John Doe 4's shirt is pulled up and he is nude from the waist down.  His erect penis and scrotum are clearly visible in the picture, but his face is not.  Defendant sent the image to John Doe 4 that same day using a mobile communication application.  Defendant engaged in unprotected sex with John Doe 4 at his residence in Delaware.

Defendant also has a publicly accessible live Twitter account under the name "matthew lee" with the user name "@brocktonboy8565."  The profile picture for the "matthew lee" account is an image of Defendant's face.  On August 29, 2014 at 6:22PM, Defendant posted to his Twitter feed the same image of John Doe 4 taken in his car, with the caption:  "Brought this kid home and fucked him."  Two of Defendant's Twitter followers replied to the image:

---

[4] The interior of the car in the image matches that of Defendant's green Mercury Marquis.

@\*\*\*\*\*\*\*\*- Hopefully, he knew his place!
@\*\*\*\*\*\*\*\*- I want one!

Defendant knowingly distributed a visual depiction that he knew to be child pornography and that was transported in interstate commerce via the internet when Defendant posted the image of John Doe 4 to a publically-accessible website.

## SENTENCING GUIDELINES AND PRESENTENCE REPORT

Although the U.S. Sentencing Guidelines are advisory, the Court must begin its sentencing analysis by properly calculating the applicable Guidelines range. *See United States v. Booker,* 543 U.S. 220, 245 (2005). The Supreme Court has declared that "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 41 (2007). Not surprisingly, given the nature of Defendant's offenses, aggravated by his other predatory behavior, the Guidelines as calculated in the PSR recommend that Defendant serve a significant sentence. The United States recommends a sentence of 50 years consistent with Defendant's Guidelines range, and submits that such a sentence is warranted under 18 U.S.C. § 3553(a).

## FACTORS UNDER 18 U.S.C. § 3553(a)

Under 18 U.S.C. § 3553(a), when imposing a sentence, the Court should consider (1) the nature and circumstances of the offense and the history and characteristics of the defendant, (2) the need for the sentence imposed to promote the goals of sentencing, (3) the kinds of sentences available, (4) the sentencing guideline range, (5) any pertinent policy statement issued by the Sentencing Commission, (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, and (7) the need to provide restitution to any victims of the offense.

    **A.**    **Nature and Circumstances of the Offense**

Defendant's conduct is egregious and predatory, both in its escalation and scope. He had a vast collection of child pornography that includes violent and sadistic depictions of minors ranging in age from infancy to young adulthood. He has taken these images and traded them with other sexual predators that, like him, receive sexual gratification from the suffering of children, as evidenced by Defendant's online statements that were noted within the PSR: "Make sure we clean up the blood from her pussy after we tear it open. Don't want her parents to know we just fucked their little young daughter" and "I won't stop even if it tears. I want to fuck our lil kindergarten boy." PSR ¶ 94. The demand for images of child pornography that depict younger and younger children being subjected to the most severe forms of sexual violence drives the supply and directly results in the continued suffering of children. This Defendant, however, was not satisfied with his already large collection of child pornography, and used online communication applications to coerce multiple children to produce new depictions of sexually explicit conduct, including masturbation videos, for his sexual gratification. And finally, when two-dimensional images were no longer enough, this Defendant, not limited to the online exploitation of children, engaged in sex acts with then-minor John Doe 4, to include oral and anal sexual intercourse.

Defendant's actions are despicable enough as described, and yet, he compounded the harm done to John Doe 4 by potentially exposing said minor to sexually transmitted infections, despite Defendant's clear knowledge of the risk his behavior posed. Defendant then flaunted his sexual exploitation of John Doe 4 by displaying John Doe 4's most private parts on a publically accessible website. Defendant maximized his humiliation of this victim by proudly proclaiming to have "brought this kid home and fucked them," much to the admiration of his like-minded social media followers.

    **B.**    **History and Characteristics of the Defendant**

Defendant's history is noteworthy and troublesome. Attached to this memorandum, under

seal, are several documents taken from the 2007 general court-martial record of trial for Defendant that illustrate Defendant's history of predatory behavior, callous disregard for his victims and their safety, and exploitation of his military record to escape harsher punishment for his actions, thereby giving him the freedom to commit his current offenses.

On December 6, 2007, pursuant to general court-martial, a military judge convicted Defendant of, among other offenses, forcible sodomy, conduct unbecoming an officer, and indecent assault. The underlying conduct included (1) using an internet-based dating website to set up sexual encounters; (2) abusing his position of trust as the Command Chaplain to initiate sexual activity with an enlisted Marine who came to him seeking counseling and advice; (3) posing for partially nude photographs that clearly display his genitalia while wearing his military uniform; and (4) engaging in anal intercourse by force with another serviceman and potentially exposing said individual to a sexually transmitted infection that could result in serious bodily harm. The maximum punishment that Defendant faced after entering his guilty pleas was a dishonorable discharge from the military, forfeiture of all pay and allowances, and life imprisonment without the possibility of parole.

Despite the potential for a long sentence of imprisonment, Defendant was only sentenced to twelve years confinement, to be suspended after the completion of two years of incarceration. At his sentencing, Defendant gave a statement expressing remorse for his actions and asked that his military record serve as some mitigation for his conduct. Defendant asked for mercy and clemency and received it, serving only a fraction of his sentence. Defendant was then given a chance, after his release, to atone for his prior criminal sexual misconduct, but he continued to exploit the vulnerable among us and turned his sexual appetite to children. Defendant proceeded to engage in the same conduct that he so "humbly" conceded at his court-martial "brought great dishonor" upon "his fellow Chaplains," but this time his victims were boys as young as fourteen-years-old.

### C. Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and to Provide Just Punishment

As set forth above, Defendant's conduct is reprehensible and there is simply no basis for leniency in this case. His online exploitation of minors is egregious enough, but his history of selecting particularly vulnerable victims and his in-person exploitation of John Doe 4 are aggravating factors that dictate the maximum sentence. The Defendant's conduct merits a sentence that will keep him imprisoned for the rest of his life; any other sentence would promote a lack of respect for the law and fail to justly punish an individual with a continual pattern of sexual exploitation of children.

### D. Need to Deter Future Criminal Conduct and to Protect the Public

The sentence in this case must send a loud message to other offenders that extreme consequences will result for people who consistently prey on the most vulnerable among us and sexually exploit children. Additionally, the public must be protected from individuals that pose an immediate threat to the health and safety of their communities. Defendant's latest criminal conduct and prior convictions demonstrate that he is unable to control his urges to act on his sexual impulses. Furthermore, Defendant submitted to two independent psychological assessments and the examiners came to the conclusion that he poses a "high" and "significant" risk for sex offense recidivism.

The threat of recidivism by a pedophile who has sexually abused a child is "appalling." *United States v. Pugh,* 515 F.3d 1179, 1201 (11th Cir. 2008) ("As Congress found…child sex offenders have appalling rates of recidivism and their crimes are under-reported."); *see also United States v. Allison,* 447 F.3d 402, 405-06 (5th Cir. 2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders."). The Supreme Court has also noted "grave concerns over the high rate of recidivism among convicted sex offenders and

their dangerousness as a class," and has found that "[t]he risk of recidivism posed by sex offenders is frightening and high."  *Smith v. Doe,* 538 U.S. 84, 103 (2003) (quotation marks omitted).

Indeed, even if Defendant were imprisoned for a substantial period of time such that he would be less likely to commit hands-on sexual assaults against children, scholarly research in this area demonstrates that sexual predators like Defendant often simply change their modus operandus. Matt Hart, *The Geriatric Sex Offender: Senile or Pedophile?,* 32 LAW & PSYCHOL. REV. 153 (2008) ("Generally, older sex offenders engage in more passive sexual activity as compared to their younger counterparts.")  For example, fondling by elderly offenders is more prevalent than intercourse.  Research has also shown that elder offenders are more likely to commit non-contact offenses such as pedophilia or exhibitionism.

Simply stated, Defendant has harmed multiple children in grievous ways and poses a future danger to other children.  A long term of imprisonment, such as one that guarantees that he will remain incarcerated for the duration of his life will prevent any future harm.

E.   **Need to Provide Treatment to Defendant**

Due to the nature of the Defendant's crimes, the Defendant should be ordered to participate in a sex offender treatment program while incarcerated.  Defendant was afforded the opportunity to seek counseling following his dishonorable discharge from the military.  During the military investigation in 2007, evidence revealed that Defendant possessed child pornography.  Charges related to his possession of these images were never brought, however there was ample time and opportunity for Defendant to avail himself of therapy and treatment to control his sexual interest in children.  Defendant chose not to seek treatment and ultimately engaged in hands-on sexual exploitation of a child.  It is clear that Defendant needs treatment, but just as clear is his need for accountability and punishment.

### F. Need to Avoid Unwarranted Sentencing Disparities

The Defendant's crimes, history and characteristics, along with his actions related to the crime of conviction, all support an appropriately lengthy sentence of imprisonment. Furthermore, the need to avoid unwarranted sentencing disparities is applicable not just to Defendants within the District of Delaware, but throughout the country. Courts in several districts have imposed lengthy and often *de facto* life sentences in production of child pornography cases. For example, in *United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009), the Eleventh Circuit affirmed as reasonable a 100-year (1,200 months) sentence for a first-time offender who sexually abused a 13-year-old girl and produced pornographic images of the victim. *Id*. The *Sarras* court noted several other child exploitation cases in which courts upheld lengthy sentences as substantively reasonable. *Id*. *See United States v. Johnson*, 451 F.3d 1239, 1244 (11th Cir. 2006) (upholding as reasonable a 140-year sentence for abusing and photographing three boys between the ages of 8 and 16 based on consecutive statutory maximums under 18 U.S.C. § 2251(e) and § 2252A(b)(1)); *United States v. Huffstatler*, 561 F.3d 694, 698 (7th Cir. 2009) (upholding as reasonable an above-guidelines, 450-month sentence for producing pornographic pictures of a 14-year-old boy); *United States v. Raplinger*, 555 F.3d 687, 695 (8th Cir. 2009) (upholding as reasonable a 457-month sentence for photographing and having sexual intercourse with a 15-year-old girl), *cert. denied*, 129 S. Ct. 2814 (2009); *see also United States v. Paton*, 535 F.3d 829, 837-38 (8th Cir. 2008) (concluding that life sentence for five counts of production of child pornography was not cruel and unusual punishment in violation of the Eighth Amendment); *United States v. Pugh*, 515 F.3d at 1202 ("[W]e have typically treated child sex offenses as serious crimes, upholding severe sentences in these cases"). Defendant in this case is not only a producer of child pornography, he is a collector, distributer, and has a history of criminal sexual misconduct. The need to avoid unwarranted sentence disparities clearly weighs in favor of a sentence that is consistent with Defendant's Guidelines calculation. 18 U.S.C. § 3553(a)(6).

G.   **Restitution**

As reflected in the Presentence Report, restitution has not been requested by any of the victims in this case.

## CONCLUSION

The United States agrees that the Presentence Report's Guidelines calculations are correct. For the reasons stated above, the United States respectfully asks this Court to impose the statutory maximum sentence of 50 years of imprisonment followed by lifetime supervised release.

        CHARLES M. OBERLY, III
        United States Attorney

        /s/Edmond Falgowski
        Edmond Falgowski
        Assistant United States Attorney

By : /s/ Herbrina D. Sanders
Herbrina D. Sanders

        Trial Attorney
        United States Department of Justice
        Criminal Division
        Child Exploitation and Obscenity Section
        1400 New York Ave. NW, Suite 600
        Washington, D.C. 20005
        Phone: (202) 616-1951
        Fax: (202) 514-1793
        Email: herbrina.sanders@usdoj.gov

Certificate of Service

I hereby certify that on September 30, 2016, I caused the attached document to be electronically transmitted to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing, of which opposing counsel is a member.   The sealed general court-martial record of trial was sent via FedEx to Eleni Kousoulis, Office of the Federal Public Defender, 800 N. King Street, Suite 200, Wilmington, Delaware 19801, on Friday, September 9, 2016.

/s/ Herbrina D. Sanders
Herbrina D. Sanders
Trial Attorney
United States Department of Justice
Criminal Division
Child Exploitation and Obscenity Section
1400 New York Ave. NW, Suite 600
Washington, D.C. 20005
Phone: (202) 616-1951
Fax: (202) 514-1793
Email: herbrina.sanders@usdoj.gov